**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara T. Cooper, ) | No. CV-06-0261-PHX-SMM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| Jo Anne Barnhart, COMMISSIONER,) | |
| S O C I A L   S E C U R I T Y) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

Before the Court are a Motion for Summary Judgment filed by Plaintiff Barbara T. Cooper (Dkt. 18) and a Cross Motion for Summary Judgment filed by Defendant Jo Anne Barnhart, Commissioner of the Social Security Administration ("SSA") (Dkt. 26). These motions require the Court to determine (1) if substantial evidence exists to support the Administrative Law Judge's decision, and (2) if correct legal standards were applied. For the reasons set forth below, the Court will affirm the decision of the Administrative Law Judge.

**BACKGROUND**

As a preliminary matter, the Court takes Judicial Notice of the transcript of the administrative proceedings.[1]

---

[1] A court may take judicial notice of "records and reports of administrative bodies." *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).

**i. Factual History**

Plaintiff Barbara T. Cooper ("Plaintiff") was born in Yugoslavia and previously worked as a janitor and a maid. She alleges that she became disabled on March 1, 2003, due to major depression, severe headaches, fatigue, feelings of isolation, and being easily agitated.

Brent B. Geary, Ph.D., a consultative evaluating psychologist, reported on July 23, 2003, that Plaintiff had a major depressive disorder, recurrent, presently moderate. (Transcript ("Tr.") at 135). In addition, Dr. Geary reported that Plaintiff had a mixed personality disorder with depressive, avoidant, and dependent features, moderate to severe and probable borderline intellectual functioning. *Id.* Dr. Geary reported that Plaintiff only speaks Serbian and that her husband served as the translator during most of his evaluation. *Id.* Dr. Geary noted "a somewhat suspicious air around the husband" and provided that "the confidence with which a diagnosis can be rendered in this case must be tempered due to the husband being a source of much of the information from which the impression [was] rendered." *Id.*

Daniel K. Watkins, Ph.D., a consultative evaluating psychologist, examined Plaintiff on September 11, 2003. Dr. Watkins diagnosed Plaintiff with major depressive disorder and adjustment reaction with mixed emotional features, but "considered this to be a highly suspcious case with many apparent unresolved contradictions and relevant questions." (Tr. at 140-141). After noting that "there are many elements of this case and of claimant's story that just in [his] opinion do not add up," Dr. Watkins stated that his impression was probable malingering. (Tr. at 141).

Dushan Kosovich, M.D., a psychiatrist based in New York, became Plaintiff's treating psychiatrist after she was brought to his office during a trip to New York to visit her husband's family. (Tr. at 140). Dr. Kosovich's opinion was that the Plaintiff had been suffering from many chronic somatic problems for years as well as from very serious, chronic psychiatric syndromes that had caused her to develop a psychiatric disability. (Tr. at 189-191). However, Dr. Kosovich also stated that the cause of Plaintiff's condition was "her on-the-job accident of 1/31/03" (Tr. at 191).

J. Bisla, M.D., reported on March 11, 2004, that psychiatric evaluation showed Plaintiff had a major depressive disorder, recurrent, with psychotic features; and dysthymia. (Tr. at 201-213). Dr. Bisla diagnosed Plaintiff with severe limitations, meaning extreme impairment of ability to function. (Tr. at 211-213).

Plaintiff's disability claim was referred to the Cooperative Disability Investigations Unit of Phoenix, Arizona ("CDI"), after a complaint was filed by the Phoenix Disability Determination Service regarding her application for Social Security Disability and Supplemental Security Income benefits. (Tr. at 30). CDI's findings included that Plaintiff is capable of performing household chores, such as taking out the trash, and that Plaintiff is capable of effectively communicating in English despite her presentation at the SSA Field Office and consultative examination with Dr. Geary. (Tr. at 28-36).

**ii. Procedural History**

On March 5, 2003, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. at 16). After the claims were denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 16). A hearing was held on April 14, 2005. On June 20, 2005, the Administrative Law Judge issued a decision denying Plaintiff to a Period of Disability and Disability Insurance Benefits. (Tr. at 22). The ALJ's decision became final when the Appeals Council declined Plaintiff's request for review on November 23, 2005. (Tr. at 7-9). Plaintiff brought this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Dkt. 1).

Plaintiff filed the instant motion for summary judgment on August 31, 2006. (Dkt. 18). Defendant filed a Response to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment on October 3, 2006. (Dkt. 22). In turn, Plaintiff filed a Response to Defendant's Cross Motion for Summary Judgement and Reply in Support of Plaintiff's Motion for Summary Judgment on December 1, 2006. (Dkt. 30). The motions are now fully briefed and ripe for disposition by this Court.

**STANDARD OF REVIEW**

Within the District of Arizona, Social Security appeals are resolved using the summary judgment process. Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing factual determinations by the Commissioner, acting through the Administrative Law Judge, this Court affirms if substantial evidence supports the determinations. *See Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion. *Howard*, 341 F.3d at 1011; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1193; *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *See Benton*, 331 F.3d at 1040; *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *See Edlund*, 253 F.3d at 1156; *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**DISCUSSION**

I. The ALJ's Determination Regarding Plaintiff's Mental Impairment

The ALJ determined that Plaintiff "has no medically determinable mental impairment" (Tr. 18) or "combination of impairments, which caused limitations in her ability to function sufficient enough to prevent substantial gainful activity for 12 consecutive

- 4 -

1  months" (Tr. 20).  Plaintiff challenges the ALJ's determinations regarding her mental
2  impairment, arguing: (1) "[t]here is not an iota of evidence to support the ALJ's finding that
3  her psychological impairment is not severe" (Dkt. 20 at 4); (2) the ALJ failed to set forth
4  sufficient reasons to reject the opinions of the treating and consulting physicians (*Id*. at 9-
5  14); and (3) the ALJ erred by stopping the sequential analysis at the second step (*Id*. at 6).
6        In concluding that Plaintiff had no medically determinable mental impairment, the
7  ALJ considered the evaluations and reports of two consultative evaluating psychologists,
8  Brent B. Geary, Ph.D., and Daniel K. Watkins, Ph.D., and two psychiatrists, Dushan
9  Kosovich, M.D. and J. Bisla, M.D.  Dr. Geary reported that Plaintiff had a major depressive
10 disorder and a mixed personality disorder with depressive, avoidant and dependent features.
11 (Tr. 19).  However, the ALJ found Dr. Geary's diagnoses "unreliable" because Plaintiff's
12 husband was "the source of much of the information from which the diagnostic impression
13 was rendered." (Tr. 19).  Dr. Watkins stated that his impression was probable malingering
14 due to the "many apparent unresolved contradictions." (Tr. 141).  Dr. Kosovich, Plaintiff's
15 treating psychiatrist, opined that Plaintiff had been suffering from "many chronic somatic
16 problems for years as well as from very serious, chronic psychiatric syndromes that caused
17 her to develop a psychiatric disability." (Tr. 18).  The ALJ gave Dr. Kosovich's opinion
18 "little weight" because Dr. Kosovich's reports give "inconsistent statements and the
19 psychological reports show unreliable statements by [Plaintiff's] husband and evidence of
20 malingering." (Tr. 19).  For example, the ALJ pointed out that Dr. Kosovich's February 27,
21 2003 report is inconsistent with his May 26, 2003 report because the former states that
22 Plaintiff had been suffering from serious psychiatric syndromes for years while the latter
23 states that her psyciatric disability was promoted by her on-the-job accident in January,
24 2003. (Tr. 19).  Dr. Bisla reported that Plaintiff had a major depressive disorder with
25 psychotic features and dsthymia.  Like Dr. Kosovich's opinion, the ALJ decided to give
26 "little weight" to the opinion of Dr. Bisla because "such extreme limitations are not
27 supported by the information in the progress notes." (Tr. 19).  The progress notes, according
28 to the ALJ, show that Plaintiff had taken medications in the past without any psychiatric

hospitalizations or suicide attempts. (Tr. 20). The ALJ also noted that Plaintiff had no history of hypomanic or manic episodes or self-mutilation and that medication had improved her mood and behavior to the point that she "felt better more often than she felt bad." (Tr. 20). After considering the psychiatric and psychological reports, the ALJ determined that Plaintiff failed to establish a medically determinable mental impairment and that she did not have an impairment or combination of impairments limiting her ability to function enough to prevent substantial gainful activity for 12 consecutive months. (Tr. 20).

The Court finds that there is substantial evidence supporting the ALJ's finding that Plaintiff has no medically determinable mental impairment. The record indicates that the ALJ considered all of the medical opinions and made reasonable findings about what the evidence showed. First, while all of the physicians in the case at bar did opine that Plaintiff was depressed or suffering from a major depressive disorder, there was substantial evidence to raise doubts about their diagnoses. For example, Dr. Geary stated that he was told that Plaintiff only speaks Serbian and that her husband served as the translator during most of his evaluation. (Tr. at 135). However, the investigator for the CDI indicated that Plaintiff speaks English fluently. (Tr. at 29). Sensing "a somewhat suspicious air around the husband," Dr. Geary stated that "the confidence with which a diagnosis can be rendered in this case must be tempered due to the husband being a source of much of the information from which the impression [was] rendered." (Tr. at 135). In addition, Dr. Watkins considered this a "highly suspicious case" and stated that he "strongly suspect[ed] malingering." (Tr. at 141). Therefore, there is substantial factual evidence to support the ALJ's conclusion that Plaintiff has no medically determinable mental impairment.

In addition, the Court finds substantial evidence supports the ALJ's determination that the opinions of Dr. Kosovich, Dr. Geary and Dr. Bisla were unreliable and inconsistent with the record as a whole. As noted by the ALJ, Dr. Kosovich offered inconsistent opinions about the cause of Plaintiff's psychiatric impairments. (Tr. at 19). Dr. Kosovich stated that the cause of her condition was " her on-the-job accident of 1/31/03" (Tr. at 191), yet he also stated that "she has been suffering from multiple somatic problems for years [and] very

- 6 -

serious chronic psychiatric syndromes that have caused her to develop a psychiatric disability" (Tr. at 189). Moveover, certain aspects of Plaintiff's professional relationship with Dr. Kosovich aroused the suspicion of Dr. Watkins, a consultative evaluating psychologist. Dr. Watkins noted that Plaintiff was unable to explain why her husband was willing to pay "out of pockets" for a visit to Kosovich during a visit to New York, but he was unwilling to pay for a psychiatrist in Arizona, her place of residence. (Tr. at 140). Dr. Watkins further stated, "I strongly suspect malingering and/or other effort to deceive me and other examiners." (Tr. at 141). Finally, an investigative report prepared by the Cooperative Disability Investigations Unit notes that there is conflicting information regarding Dr. Kosovich's opinion that Plaintiff's condition was caused by her alleged on-the-job injury. The report points out that Plaintiff did not report any work-related accident on her disability application and that she never mentioned this injury to a field investigator or Dr. Geary.

The Court also finds that substantial evidence supported the ALJ's decision to conclude that Dr. Geary's opinion was unreliable and give little weight to the opinion of Dr. Bisla. Dr. Geary, himself, questioned the reliability of his diagnosis, stating, "the confidence with which a diagnosis can be rendered in this case must be tempered somewhat due to the husband being a source of much of the information from which the impression was rendered." (Tr. at 135). As noted by Dr. Geary, Plaintiff's husband served as translator during the evaluation because Plaintiff "reportedly speaks only Serbian." (Tr. at 135). Yet, the investigator for the Cooperative Disability Investigations Unit indicated that Plaintiff speaks English fluently. (Tr. at 29). Dr. Bisla's opinion was also undermined by substantial evidence in the record. While Dr. Bisla diagnosed Plaintiff with extreme limitations the ALJ correctly noted that such extreme limitations were not supported by the information in the progress notes. Moreover, the report prepared by CDI further suggests that Plaintiff is not severely limited as she speaks English fluently, performs housework and is involved in the family's finances. (Tr. at 33-36). In short, the ALJ did not err by concluding that Plaintiff did not have a mental impairment for disability purposes because there were many inconsistencies in the record and substantial evidence of malingering.

In addition to finding that the ALJ's determinations regarding Plaintiff's psychological impairment were supported by substantial evidence, the Court finds that the ALJ applied the correct legal standards in evaluating Plaintiff's disability claim. The ALJ properly performed a sequential evaluation pursuant to 20 C.F.R.§§ 404.1520 and 416.920 (2003). After finding that Plaintiff satisfied the first step of the sequential evaluation by determining that she was not currently engaged in "substantial gainful activity," the ALJ proceeded to the second step. (Tr. 18). At the second step of the sequential evaluation, the ALJ considered all of the medical evidence before ultimately determining that Plaintiff did not have an impairment or combination of impairments limiting her ability to function enough to prevent substantial gainful activity for 12 consecutive months. (Tr. 20). Accordingly, the ALJ did commit legal error by stopping his analysis as to the effect of the psychiatric impairment at this point because a finding of disabled or not disabled at any step in the sequential evaluation is conclusive and terminates the analysis. 20 CFR 416.920(a)(4).

Moreover, Plaintiff's argument that the opinions of the treating physicians should have been given controlling weight pursuant to SSR 96-2 is incorrect. Social Security regulations require that the ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. 20 C.F.R. § 404.1527(d)(2). Generally, the more consistent an opinion is with the record as a whole, the more weight the SSA will give to that opinion. 20 C.F.R. § 404.1527(d)(4). As previously indicated, there were numerous inconsistencies between the medical opinions and the evidence in the record and the ALJ appropriately decided against giving controlling weight to any of these opinions.

Therefore, the Court finds that there was substantial evidence of malingering surrounding Plaintiff's complaints regarding her mental illness and the ALJ reasonably concluded that Plaintiff had no medically determinable mental impairment to support a finding of disability. In addition, the Court finds that the ALJ set forth sufficient reasons for rejecting the opinions of Dr. Kosovich, Dr. Geary and Dr. Bisla. Finally, because the ALJ

1  properly determined that Plaintiff had no medically determinable mental impairment at the
2  second step of the sequential analysis, the Court finds that he did not err by ending the
3  analysis at this step.
4  <u>II. The ALJ's Determination Regarding Plaintiff's Credibility</u>
5       Plaintiff argues that the ALJ failed to set forth sufficient reasons to reject Ms.
6  Cooper's subjective complaint testimony and, therefore, Plaintiff's subjective complaint
7  testimony should result in a finding that her testimony is accepted as true. (Dkt. 20 at 14-17).
8  The Court disagrees.
9       "[O]nce a claimant produces objective medical evidence of an underlying
10 impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a
11 lack of objective medical evidence to fully corroborate the alleged severity of the
12 [complaint]." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)(en banc).  If the ALJ
13 finds the claimant's [subjective] testimony not to be credible, the ALJ must "specifically
14 make findings that support this conclusion," and the findings "must be sufficiently specific
15 to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on
16 permissible grounds and did not arbitrarily discredit [the] claimant's testimony." *Id.* at 345
17 (internal quotation marks omitted).  If there is no affirmative evidence that the claimant is
18 malingering, the ALJ must provide convincing reasons for rejecting the claimant's testimony
19 regarding the severity of symptoms.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).
20      Here, the Court finds that the ALJ gave clear and convincing reasons for rejecting the
21 extent of Plaintiff's mental impairments and those reasons were supported by substantial
22 evidence.  The ALJ gave six specific reasons for rejecting Plaintiff's credibility: (1) Dr.
23 Cunningham stated that her subjective complaints far outweighed the objective findings; (2)
24 the observations of the investigator for the Cooperative Disability Investigations Unit
25 revealed that Plaintiff had no difficult or discomfort taking the trash out of her apartment;
26 (3) the treating psychiatrist's reports contained inconsistent statements and the psychological
27 consultative evaluations were found to be unreliable; (4) the reports of her ability to speak
28 English were inconsistent; (5) Plaintiff offered inconsistent statements about her handling of

the family finances; and (6) the objective medical evidence contradicted Plaintiff and her husband's statements regarding her ability to perform normal daily activities. (Tr. at 20).

While Plaintiff attacks each of these specific findings on various grounds, the Court finds that the ALJ's findings were reasonable and supported by substantial evidence in the record. First, Plaintiff claims that Dr. Cunningham's assessment is essentially irrelevant because her disability claim is premised on a psychological impairment and he only examined her physical impairments. However, Dr. Cunningham's opinion that Plaintiff's "suggestive complaints far outweigh objective findings" are relevant to Plaintiff's credibility, which was the context in which the ALJ discussed his opinion. Plaintiff also argues that the reports about her carrying trash out to a dumpster, speaking English and handling finances are irrelevant to the credibility determination for various reasons. However, this evidence was directly relevant to the ALJ's credibility determination because it showed inconsistencies in the information that either Plaintiff or her husband had provided to individuals involved in the disability determination. Finally, Plaintiff claims that "the ALJ writes that the treating psychiatrists' reports contain inconsistent statements when compared to consultative evaluations." (Dkt. 20 at 16). However, Plaintiff misstates the ALJ's actual statement. The ALJ stated that "the reports of the treating psychiatrist contains inconsistent statements and the psychological evaluations are found to be unreliable because in the first evaluation her husband provided the information on which the diagnosis was based and in the second evaluation the doctor determined the claimant was malingering." (Tr. at 20). Therefore, the Court finds that the ALJ did not commit legal error in rejecting Plaintiff's credibility. *See Batson*, 359 F.3d at 1193.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is supported by substantial evidence. *See Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). Therefore, summary judgment in favor of Defendant is appropriate as a matter of law. Accordingly,

1  **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 18),
2  is hereby **DENIED**.
3  **IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Dkt.
4  26), is hereby **GRANTED**.
5  **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.
6  DATED this 8th day of January, 2007.

Stephen M. McNamee
United States District Judge